IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-MJ-183 |
| | ) | |
| EVER ALEXANDER RIVAS IRAHETA | ) | |
| a/k/a "Ever Alexander Iraheta Rivas," | ) | |
| a/k/a "Ever Iraheta," | ) | |
| a/k/a "Ever Rivas Iraheta," | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Corey Bolsei, being duly sworn state the following:

1.      I am a Special Agent of the United States Department of Homeland Security –
Homeland Security Investigations (HSI), the investigative component of Immigration and
Customs Enforcement (ICE), empowered under the statutory authority of Title 19, United States
Code, Section 1589a and Title 8, United States Code, Section 1357. I am an investigator or law
enforcement officer of the United States within the meaning of Title 18, United States Code,
Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations
and to make arrests. I have been employed in this capacity since September of 2018.

2.      I am a graduate of the Federal Law Enforcement Training Center Criminal
Investigator Training Program, and the HSI Special Agent Training Program. I have received
specialized training in criminal investigations relating to violations of federal statutes, to include
organized transnational gang crime and violent racketeering activity; human smuggling and
trafficking; narcotics smuggling and trafficking; and money laundering. I have applied for and

executed arrest and search warrants in furtherance of these investigations resulting in the prosecution and conviction of individuals and the seizure of drugs, weapons, cash, and other evidence of criminal activity.  I am assigned to the Washington, D.C./Northern Virginia Field Office.  Since June 2019, I have been assigned to the Transnational Gangs and Violent Crimes Group responsible for combating the proliferation of transnational, organized crime.  The group's responsibilities include disrupting and dismantling gang operations, tracing the seizure of cash and other assets derived from criminal enterprises, and criminally prosecuting or administratively removing violent gang members and their associates who pose a threat to public safety.

3.      My duties as an HSI Special Agent include the authority as an Immigration Officer to investigate and enforce administrative and criminal violations of the Immigration and Nationality Act and Title 8 of the United States Code.  I have received specialized training and have conducted investigations relating to administrative and criminal violations of the Immigration and Nationality Act and Title 8 of the United States Code.

4.      This affidavit is submitted in support of a criminal complaint charging EVER ALEXANDER RIVAS-IRAHETA (also known as "Ever Alexander Iraheta Rivas," "Ever Iraheta," and "Ever Rivas Iraheta") with possession of a firearm by a prohibited person – here, an alien illegally present in the United States – in violation of Title 18, United States Code, Section 922(g)(5)(A).

5.      The facts and information contained in this affidavit are based upon my training, experience, participation in previous immigration investigations, personal knowledge, and observations during this investigation, as well as the observations of other agents involved in this investigation.  All observations not personally made by me were related to me by the individuals who made them or are based on my review of records, documents, and other physical evidence

2

obtained during this investigation.   This affidavit contains information necessary to support probable cause, but it is not intended to include each and every fact and matter observed by me or known to the United States.

## PROBABLE CAUSE

### Criminal History and Arrest

6.      On June 20, 2020, at approximately 2:00 a.m., Fairfax County Police Department (FCPD) officers responded to a report of a fight-in-progress and shots fired in Annandale, Virginia, within the Eastern District of Virginia.   Witness-1 (W-1) told officers that a fistfight broke out among multiple individuals in a parking lot outside of a bar.   During the fight, a Hispanic male, approximately 5'2", skinny, approximately 21 to 23 years old, wearing a white shirt and blue jeans, pulled out a dark-colored gun from a dark-colored backpack.   Upon seeing the gun, one group involved in the fight ran into the crowd.   The other group involved in the fight, including the man with the gun, ran towards a white van.   W-1 then heard six gunshots fired.

7.      Shortly thereafter, a FCPD officer stopped a white van with two occupants nearby. An individual, later identified as O.C.F.. was the driver of the vehicle.   Officers noticed that O.C.F. appeared nervous and continually looked at his lap or feet.   Officers ordered O.C.F. to exit the vehicle.   Upon doing so, a .38 caliber Smith & Wesson revolver fell to the ground.   O.C.F. attempted to pick up the firearm, but was detained by officers.   Officers placed RIVAS-IRAHETA, who was sitting in the front passenger seat, in custody.   Officers then observed a Beretta pistol in the cupholder in the center console of the vehicle.   RIVAS-IRAHETA was wearing a white shirt and blue shorts.   The FCPD police report reflects that RIVAS-IRAHETA was 23 years old at the time of his arrest.   He was described in the report as 5'6" and weighing 140 lbs.

3

8.      Officers noticed that O.C.F. had scratches on his right elbow and dried blood around his mouth.  O.C.F. told officers that he had fallen earlier in the night, but later, admitted that he was involved in the fight outside the bar when he tried to help his friends.  Officers located a dark-colored backpack in the car directly behind the front passenger seat where RIVAS-IRAHETA was seated.  Inside the backpack, officers found RIVAS-IRAHETA's El Salvador passport.  Three .38 caliber cartridges and a plastic baggie of marijuana were also located in the backpack.  A scale and another .38 caliber cartridge were found directly next to the backpack.

9.      Officers conducted a show up with W-1.  Referring to RIVAS-IRAHETA, W-1 stated that he was "100% certain that was the guy with the gun."  W-1 also positively identified the stopped van as the vehicle he saw leaving the fight.  Officers provided RIVAS-IRAHETA with his *Miranda* rights and he agreed to speak with officers.  During this conversation, officers asked RIVAS-IRAHETA if he was a lawful resident of the United States.  RIVAS-IRAHETA admitted that he was not.

## Immigration History

10.      I have reviewed various law enforcement and immigration database records pertaining to RIVAS-IRAHETA.  From these records and a review of RIVAS-IRAHETA's alien file, I learned that RIVAS-IRAHETA is a citizen and national of El Salvador with no legal status in the United States.  On August 4, 2015, RIVAS-IRAHETA was encountered by the U.S. Border Patrol at or near McAllen, Texas.  There, RIVAS-IRAHETA admitted to being a citizen and national of El Salvador without the necessary legal documents to enter, pass through, or remain in the United States.  RIVAS-IRAHETA also admitted that he had illegally crossed the international boundary without being inspected by an Immigration Officer at a designated port of entry.  RIVAS-IRAHETA was processed as an expedited removal with credible fear and was referred to an asylum

4

officer.  An asylum officer found credible fear and on or about September 8, 2015, RIVAS-IRAHETA was served with a Warrant of Arrest/Notice to Appear.  RIVAS-IRAHETA has no status in the United States, but has an asylum application pending in immigration court.

11.     Investigators requested that the HSI Forensic Laboratory compare the fingerprint card obtained following RIVAS-IRAHETA's FCPD arrest on June 20, 2020 with a fingerprint on an ICE Form I-213 ("Record of Deportable Inadmissible Alien") from when RIVAS-IRAHETA was encountered by U.S. Border Patrol on August 4, 2015.  The HSI Forensic Laboratory determined that the fingerprints came from the same individual.

12.     Based on my training and experience, I know that the Smith & Wesson revolver and Beretta pistol possessed by RIVAS-IRAHETA on June 20, 2020 constitute firearms pursuant to Title 18, United States Code, Section 921(a)(3).  These firearms were not manufactured in the Commonwealth of Virginia, and thus, the firearms traveled in and affected interstate commerce.

13.     The Virginia Department of Forensic Science test-fired the two firearms and found them to be operational; each of the firearms expelled a projectile by means of an explosion.  No fingerprints were recovered from the weapons.  No cartridge cases were located at the scene of the shooting.  I know based on my training and experience that unlike a semi-automatic firearm, a revolver does not expel cartridge cases upon discharge.

## CONCLUSION

14.     Based on the information provided in this affidavit, I submit that probable cause exists to believe that on or about June 20, 2020, in Fairfax County, Virginia, within the Eastern District of Virginia, EVER ALEXANDER RIVAS-IRAHETA (also known as "Ever Alexander Iraheta Rivas," "Ever Iraheta," and "Ever Rivas Iraheta") an alien illegally present in the United

States did unlawfully and knowingly possess a firearm in violation of Title 18, United States Code,

Section 922(g)(5)(A).

Respectfully submitted,

**COREY J
BOLSEI**
Digitally signed by COREY J
BOLSEI
Date: 2021.05.26 10:50:40
-04'00'

Corey Bolsei
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on May 26, 2021.

**Theresa C.
Buchanan**
Digitally signed by Theresa C.
Buchanan
Date: 2021.05.26 12:36:55 -04'00'

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

Alexandria, Virginia

6